23sc 2533 JwB /DJF

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA and THE STATE OF MINNESOTA<br><br>*ex rel.* [UNDER SEAL],<br><br>         Relator,<br><br>      v.<br><br>[UNDER SEAL]<br><br>        Defendant. | **CASE NO.**<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMAND**<br><br>**FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)** |

## COMPLAINT FOR VIOLATIONS OF FEDERAL AND MINNESOTA FALSE CLAIMS ACTS

RECEIVED

AUG 17 2023

CLERK, U.S. DISTRICT COURT
MINNEAPOLIS, MINNESOTA

## UNDER SEAL



SCANNED
AUG 17 2023 A
U.S. DISTRICT COURT MPLS

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MINNESOTA**

| | |
|---|---|
| UNITED STATES OF AMERICA and THE STATE OF MINNESOTA<br><br>*ex rel.* PATRICK JOHNSON,<br><br>Relator,<br><br>v.<br><br>EVERGREEN RECOVERY, INC.,<br><br>Defendant. | **CASE NO.**<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMAND**<br><br>**FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)** |

## COMPLAINT FOR VIOLATIONS OF FEDERAL AND MINNESOTA FALSE CLAIMS ACTS

### I.    INTRODUCTION

1.    Relator Patrick Johnson brings this action on behalf of himself, the United States, and the state of Minnesota under 31 U.S.C. § 3729 *et seq.* (FCA) and Minn. Stat. § 15C, *et seq.* (MNFCA) to recover damages and civil penalties from Defendant Evergreen Recovery Inc. for knowingly submitting false and/or fraudulent claims to Medicaid by billing for group and individual substance abuse treatment services that it did not provide and/or were not supported by the required documentation.

2.    As more fully described herein, Defendant engaged in a systematic practice of billing for services not provided. It did this by, in some cases, falsifying log and attendance records for peer specialist and group counseling services by adding to those logs and records clients who were in fact not present for those services. In other cases,

Defendant claimed to provide a service, e.g., recreational activities, when in fact it did not. Defendant knowingly engaged in this scheme to bilk Medicaid through the submission of false bills for services not provided. Indeed, to cover up its scheme after Relator internally complained about Defendant's fraud, Defendant undertook a mass falsification of underlying client records.

3. Claims for payment for services not actually provided and claims supported by false records are not payable under Medicaid or other government-funded healthcare programs. Defendant's policy to routinely bill for substance abuse treatment services that were never performed has resulted and continues to result in the submission of false claims to Medicaid. Such claims are false under the FCA and the MNFCA.

## II.    JURISDICTION AND VENUE

4. This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 31 U.S.C. § 3732.

5. Venue is proper in this District pursuant to 28 U.S.C. § 1391 and 31 U.S.C. § 3732(a), because Defendant can be found and does business in this District. In addition, Defendant has committed acts proscribed by 31 U.S.C. §§ 3729 *et seq*. in this District.

6. Relator is aware of no statutorily applicable public disclosure of the allegations or transactions in this Complaint. Should there have been such a disclosure prior to the filing of this Complaint, Relator is an "original source" as that term is defined at 31 U.S.C. § 3730(e)(4)(B) and Minn. Stat. § 15C.01 because he has knowledge that is independent of and materially adds to any publicly disclosed allegations or transactions,

and Relator voluntarily provided this information to the state and federal government before filing this action.

### III.    PARTIES

#### A. Plaintiffs/Relator

7.    The United States of America is a governmental plaintiff on whose behalf the Relator brings this action under 31 U.S.C. § 3729 *et seq*. The United States acts through its various agencies and departments, including the Department of Health and Human Services (HHS), and the Medicaid, Medicare, and TRICARE programs.

8.    The state of Minnesota is a governmental plaintiff on whose behalf Relator brings this action under Minn. Stat. § 15C.

9.    The United States and Minnesota are the real parties in interest to the claims in this action.

10.    Relator Johnson is a citizen of the United States and a resident of Dakota County, Minnesota. Relator Johnson began working at Evergreen Recovery in April 2023 as a Group Counselor. He is a licensed Alcohol and Drug Counsellor with the Minnesota Board of Behavioral Health and Therapy, a licensed Graduate Social Worker with the Minnesota Board of Social Work, and a Registered Dietitian.

#### B. Defendant

11.    Evergreen Recovery, Inc. (Evergreen Recovery or Defendant) is a company organized in June 2015 and authorized to conduct business in the State of Minnesota. Evergreen Recovery's principal office is located in Saint Paul, Minnesota. Evergreen Recovery provides chemical dependency treatment services, including outpatient services,

residential services, and chemical health assessments, among others, to persons in Minnesota. Evergreen Recovery is licensed by the Minnesota Department of Human Services as a 245G facility.

### IV.    STATUTORY AND REGULATORY CONTEXT

12.    Defendant violated the FCA and the MNFCA by falsifying records and billing for services never provided, which caused false statements to be used and false claims to be submitted to Medicaid.

#### A. The Federal and State False Claims Acts

13.    The FCA is "the Government's primary litigative tool" for combating schemes to fleece the government. False Clams Amendment Act of 1986, S. Rep. No. 99-345, at 2 (1986), reprinted in 1986 U.S.C.C.A.N. 5266, 5274. It is broadly drafted to reach beyond common law fraud.

14.    The FCA prohibits any person from knowingly making, or causing to be made, a false or fraudulent claim for payment to the United States. 31 U.S.C. § 3729(a)(1)(A).

15.    The FCA also prohibits knowingly making, using, or causing to be made or used a false record or statement material to a false or fraudulent claim. 31 U.S.C. § 3729(a)(1)(B).

16.    The FCA defines "knowingly" as "hav[ing] actual knowledge of the information," "act[ing] in deliberate ignorance of the truth or falsity of the information," or "act[ing] in reckless disregard of the information." 31 U.S.C. § 3729(b)(1). It requires no proof of specific intent to defraud. *Id.*

4

17.     Under the FCA, the term "claim" means any request or demand for money, whether under a contract or otherwise, presented to an officer, employee, or agent of the United States. 31 U.S.C. § 3729(b)(2)(A)(i). A "claim" is also a request or demand for money made to a contractor or other recipient if (a) the money is to be spent or used on the Government's behalf or to advance a Government program or interest, and (b) if the Government provides, has provided, or will reimburse such contractor or other recipient for any portion of the money requested or demanded. 31 U.S.C. § 3729(b)(2)(A)(ii).

18.     A false or fraudulent claim under the FCA may take many forms, "the most common of which is a claim for payment for goods and services not provided or provided in violation of contract terms, specification, statute or regulation." S. Rep. No. 99-345, at 9 (1986).

19.     The FCA defines the term "material" to mean "having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property." 31 U.S.C. § 3729(b)(4).

20.     The FCA provides for treble damages, as well as for assessment of a civil penalty for each violation or each false claim. *See* 31 U.S.C. § 3729(a)(1).

21.     The Minnesota False Claims Act, Minn. Stat. 15C, *et seq*. mirrors the federal False Claims Act.

### B. Reimbursement by Government-Funded Health Care Programs

22.     In 1965, Congress established the Grants to States for Medical Assistance Programs under Title XIX of the Social Security Act, 42 U.S.C. §§ 1396-1396w-6 (Medicaid).

23.    Medicaid provides medical and health-related assistance for society's neediest and most vulnerable individuals, including pregnant women, children, and persons who are blind or suffer from other disabilities and who cannot afford the cost of health care. 42 U.S.C. § 1396d(a).

24.    Medicaid is administered at the federal level by the Secretary of HHS, an agency of the United States, through CMS, which promulgates regulations, including minimum coverage parameters.

25.    Medicaid is a joint federal-state health care program. 42 U.S.C. § 1396b. If a state elects to participate in the program, the costs of Medicaid are generally shared between the state and the federal government. 42 U.S.C. § 1396a(a)(2). In order to receive federal funding, a participating state must comply with requirements imposed by the Social Security Act and regulations promulgated thereunder.

26.    In return for receipt of federal subsidies, the state of Minnesota is required to administer its Medicaid program in conformity with a plan that satisfies the requirements of the Social Security Act and accompanying regulations. 42 U.S.C. §§ 1396--1396v.

27.    Medical Assistance (MA) is Minnesota's Medicaid program. The federal government, through CMS, provides approximately 56% of the funds used by the Minnesota Medicaid program to provide medical assistance to persons enrolled in the Medical Assistance.

28.    Medical Assistance covers health services actually rendered that are medically necessary as defined by Minn. Stat. 9505.0175, subp. 25; are appropriate and

effective for the medical needs of the recipient; and represent an effective and appropriate use of medical assistance funds. Minn. Stat. 9505.0210.

29.     Medical Assistance covers substance use disorder treatment services according to section 254B.05, subdivision 5, except for room and board. Minn. Stat. 256B.0625, subd. 24a.

30.     In 2018, Minnesota made peer recovery services for substance abuse disorder a Medicaid MA-reimbursable service.[1]

31.     Claims for services are submitted using Current Procedural Terminology ("CPT") billing codes. CPT is a listing of descriptive terms and identifying codes for reporting medical services and procedures first developed by the American Medical Association ("AMA") and adopted by CMS as part of its Healthcare Common Procedure Coding System ("HCPCS") for reimbursement of claims. The use of HCPCS is required for the reimbursement of federally funded healthcare claims, including those submitted to Medicaid.

32.     Each HCPCS code uniquely identifies to government payors the specific service or services rendered and corresponds to an amount of reimbursement that is owed to the provider. For this reason, the financial integrity of all federally funded healthcare programs depends on the truthful and correct usage of the coding system. The HCPCS codes relevant here include H2035, H2035 HQ, H0038 U8, and T1016 HN U8.

---

[1] https://mn.gov/mmb/impact-evaluation/projects/peer-recovery-services/

### C. Enrolled Medicaid Providers Must Certify Their Compliance with Applicable Laws and Regulations

33.    All Medicaid providers are required to enter into a provider agreement with the state as a condition of participation in the program. 42 C.F.R. §431.107(b).

34.    Each time a provider submits a claim, the provider certifies that the services were provided in accordance with federal and state statutes, regulations, and program rules.

35.    All Medicaid claim forms include the following certifications: (1) "This is to certify that the foregoing information is true, accurate, and complete," and (2) "I understand that payment of this claim will be from Federal and State funds, and that any falsification or concealment of a material fact, may be prosecuted under Federal and State laws." 42 C.F.R. § 455.18.

36.    Accordingly, through means such as provider agreements and claim forms, health care facilities and physicians who participate in federal or state health care programs must certify that they have complied with the applicable state and federal rules and regulations in order to receive payment for their services.

### D. Substance Abuse Treatment Services

37.    Licensed treatment programs provide individual and group counseling to help clients identify and address needs related to substance use and develop strategies to avoid harmful substance use after discharge and to help clients obtain the services necessary to establish a lifestyle free of the harmful effects of substance use disorder. Minn. Stat. 245G.07.

38.     All treatment services, except peer recovery support services and treatment coordination, must be provided by an alcohol and drug counselor qualified according to section 245G.11, subdivision 5. Minn. Stat. 245G.07, Subd. 3.

39.     A license holder[2] must maintain a file of current and accurate client records on the premises where the treatment service is provided or coordinated. The program must have a policy and procedure that identifies how the program will track and record client attendance at treatment activities, including the date, duration, and nature of each treatment service provided to the client. Minn. Stat. 245G.09, subd. 1 (a), (b). Records are required to be maintained for 7 years. Minn. Stat. 245G.09, subd. 2.

40.     Any service that is billed for at a group rate, including all treatment services identified in MN Stat. 245G.07, must not exceed the counseling group staffing requirements in MN Stat. 245G.10, subd. 4. (adults) or MN Stat. 245G.17m subd. 3. (adolescents). Adult group counseling shall not exceed 16 clients. Minn. Stat. 245G.10, subd. 4.[3]

41.     HCPCS code H2035 is used for individual counseling, and H2035 HQ is used for group counseling provided in these settings. H2035 is reimbursed in one-hour increments at a rate of $72.11 per hour, while H2035 HQ is reimbursed in one-hour

---

[2] "License holder" means an individual, organization, or government entity that is legally responsible for the operation of the program or service, and has been granted a license by the commissioner under this chapter and the rules of the commissioner. Minn. Stat. 245A.02, subd. 9.

[3] Relator understands that lecture-style group counseling or non-psychotherapeutic group may allow for up to 48 clients. Minnesota does authorize variances. *See* Minn. Stat. 245G.03.

increments at $35.03 per hour.[4] The code is defined as "alcohol and/or drug counseling per hour." Because this code is defined by a unit of time, both the Administrative Uniformity Committee (AUC) and CPT language support the concept that the unit of time is attained when the mid-point is passed and that more than half of the time must be spent performing the service in order to report that code, excluding any breaks. Accordingly, treatment services must last 31 continuous minutes to qualify as an hour of service. Breaks may not be included in these continuous minutes.[5]

42.    HCPCS code H0038 U8 is used for peer recovery support, and T1016 HN U8 is used for treatment coordination. H0038 U8 is reimbursed in 15-minute increments at a rate of $15.02 per 15 minutes, while T1016 HN U8 is reimbursed in 15 minutes increments at $11.71 per 15 minutes.[6] These codes are defined as "peer support services, per 15 minutes," and "case management, each 15 minutes." Because these codes are defined by a unit of time, both the Administrative Uniformity Committee (AUC) and CPT language support the concept that the unit of time is attained when the mid-point is passed and that more than half of the time must be spent performing the service in order to report that code, excluding any breaks. Accordingly, treatment services must last 8 continuous minutes to qualify as 15 minutes of service. Breaks may not be included in these continues minutes.

---

[4] https://edocs.dhs.state.mn.us/lfserver/Public/DHS-7612-ENG

[5] https://www.primewest.org/substance-use-disorder-billing

[6] https://edocs.dhs.state.mn.us/lfserver/Public/DHS-7612-ENG

43.    MN DHS provides adult non-residential treatment rates as follows:[7]

| HCPCS Code | Base Rate | 1115 Demonstration Base Rate | *Co-Occurring Complexity HH | Culturally Responsive Complexity U4 | Disability Responsive Complexity U3 | Clients w/Children Complexity U6 | Medical Services Complexity U5 |
|---|---|---|---|---|---|---|---|
| H2035 | $72.11 | $86.53 | +$6.49 | +$7.93 | +$7.93 | +$7.93 | +$17.31 |
| H2035 HQ | $35.03 | $42.04 | +$3.15 | +$3.85 | +$3.85 | +$3.85 | +8.40 |
| H0038 U8 | $15.02 | N/A | N/A | N/A | N/A | N/A | N/A |
| T1016 HN U8 | $11.71 | N/A | N/A | N/A | N/A | N/A | N/A |

### E. Minnesota Medicaid Payment Rules

44.    Minnesota Statute 9505 governs the administration of the Medical Assistance program and establishes the standards used to determine the eligibility of an individual to participate in the program, the services and providers that are eligible to receive Medical Assistance payments, and the conditions a provider must meet to receive payment.

45.    As a condition of payment by Medical Assistance, a provider must document each occurrence of a health service provided to a recipient. Medical Assistance funds paid for health services not documented in a recipient's health service record shall be recovered by the department. Minn. Stat. 9505.2175, subp. 1.

46.    A health service record, among other things, must: a) include the recipient's name on each record page; b) provide the date, and length of time spent with the recipient; c) include the signature and title of the person who rendered the service; d) report the recipient's progress or response to treatment. Minn. Stat. 9505.2175, subp. 2. A health service record must also be truthful.

---

[7] https://edocs.dhs.state.mn.us/lfserver/Public/DHS-7612-ENG

47. To be eligible for payment, among other things, a health service must be medically necessary, be an appropriate and effective for the medical needs of the recipient, and represent an effective and appropriate use of Medical Assistance funds. Minn. Stat. 9505.0210.

48. A provider who fails to comply with the terms of participation in the provider agreement is subject to monetary recovery, sanctions, or civil or criminal action. Minn. Stat. 9505.0195, subp. 6.

49. The department shall recover Medical Assistance funds paid to a provider if the department determines that the payment was obtained fraudulently or erroneously. Any State action taken as a result of harm to a state's Medicaid program must seek to recover damages sustained by the Medicaid program as a whole, including both federal and state shares.[8]

50. Monetary recovery under the Medical Assistance program is permitted for the following:

    a. intentional and unintentional error on the part of the provider;

    b. failure of the provider to comply fully with all authorization control requirements, prior authorization procedures, or billing procedures;

    c. failure to properly report third-party payments;

    d. fraudulent or abusive actions on the part of the provider.

Minn Stat. 9505.0465, subp. 1.

---

[8] https://oig.hhs.gov/reports-and-publications/workplan/summary/wp-summary-0000231.asp

## V.    FACTUAL ALLEGATIONS

### A. Overview of Defendant's Illegal Conduct

51.    Relator Johnson began working at Evergreen Recovery in April 2023 as a Group Counselor.

52.    In his role, Relator provided group counseling services to outpatient clients. Defendant serves approximately 350 clients at any given time.

53.    Relator provided counseling services Monday-Friday during one of the three group sessions offered by Defendant: a morning session, an afternoon session, or an evening session. Clients attend a minimum of one group session per day, five days a week.

54.    Peer recovery specialists are required to use log sheets to document all services rendered. Group facilitators are required to use a daily group sign-in sheet to record client attendance.

55.    The log and attendance documentation is then used to enter service lines in Defendant's Electronic Health Records (EHR) system Procentive. The service lines derived from the log and attendance documentation are in turn used to bill the government for Defendant's services.

56.    All log and attendance documentation is scanned into a folder on Defendant's shared network, and paper copies are stored in a binder or file cabinet in the revenue team's office. Any paper records are maintained by Defendant for a minimum of seven years.

57.    During his employment, Relator observed a systematic practice by Defendant of falsifying records and submitting fraudulent billing to the Minnesota Medical Assistance program.

58.     As discussed in more detail below, Relator observed that Defendant billed for peer recovery services and counseling services it did not provide. In order to facilitate these fraudulent billings, Defendant also falsified documents by 1) adding services lines for clients who were not actually in attendance for peer recovery or counseling services, and 2) creating false clinical notes to support those fake services lines.

59.     Relator observed the alleged fraudulent conduct throughout his employment. Unwilling to participate in Defendant's fraudulent scheme, and after his efforts to stop the conduct went unaddressed by Defendant, Relator was forced to leave Evergreen Recovery in June 2023.

60.     During Relator's employment, he identified that Defendant's false-billing scheme had been occurring for years prior to his employment. Defendant made no efforts to stop the conduct at any time, nor indicated any intent to do so. To the contrary, Defendant engaged in ongoing efforts to falsify documents and conceal its efforts. Relator understands that the conduct described herein is ongoing.

### B. Defendant Falsely Billed for Peer Recovery Services It Did Not Provide

61.     Defendant employs approximately six Certified Peer Recovery Specialists (CPRS).

62.     MN DHS requires that all CPRS services billed under H0038 U8 be provided 1-on-1 in billed in 15-minute increments. Each increment is known as a single "unit." A single unit is attained when the mid-point is passed. Thus, a service cannot be billed if the service lasted less than 8 consecutive minutes. To illustrate, 7 minutes or less of treatment

services provided would not be billable, while 23 minutes of treatment services provided would be 30 billable minutes.

63.    Through review of Defendant's EHR system, Relator observed that from April 5, 2023 through May 26, 2023 (37 days) there were 5,435 hours of services billed by these six peer recovery specialists, which amounts to more than 20,000 peer recovery units.

64.    This equates to each peer recovery specialist billing for services provided approximately 24 hours per day for 37 consecutive work days. This is facially impossible and actually false.

65.    As but one example, Relator observed that S.J., Director of Support Services and a peer recovery specialist, billed for 295 peer recovery units on June 6, 2023. This equates to almost 36 hours of services billed for a single 24-hour period.

66.    Between April 5, 2023 through May 26, 2023, Relator observed that S.J. billed for 6,674 peer recovery units. The likely maximum number of billable units during this time was 2,400. The 6,674 units billed by S.J. would have required S.J. to provide services for a continuous 12 hours each day for 37 consecutive work days.[9] This did not actually happen. This amounts to more than $64,000 in services billed that could not have been and were not provided.

67.    In order to bill for the total 5,435 hours of peer recovery specialist services claimed from April 5, 2023 through May 26, 2023, Defendant entered 25,038 peer recovery units, none of which had the required supporting documentation of the service Defendant

_____

[9] Presuming an 8-hour work day, without breaks, the maximum number of billable units would be 32 units.

claimed to have provided. This amounts to more than $376,000 fraudulently obtained funds in just that short time period.

68.     Accordingly, Defendant billed for CPRS services that it did not provide, which resulted in false and/or fraudulent claims being submitted to government payors in violation of the FCA.

### C. Defendant Falsely Billed for Counseling Services it Did Not Provide

69.     Defendant employs approximately 11 primary counselors and 3 group counselors.

70.     MN DHS requires that all counseling services billed under H2035 be provided 1-on-1 and billed in one-hour increments, and services under H2035 HQ must be provided in a group setting of no more than 48 persons and billed in one-hour increments. Again, each increment is known as a single "unit." A single unit is attained when the mid-point is passed. Thus, a service cannot be billed for less than 30 consecutive minutes. To illustrate, 30 minutes or less of treatment services provided would not be billable, while one-hour and 31 minutes of treatment services provided would be 2 billable hours.

71.     During his employment, Relator observed that service lines were being added to his services records in Procentive and was concerned that this conduct constituted fraudulent billing.

72.     On or about June 9, 2023, Relator discussed his concerns with colleague and Primary Counselor D.D. and confirmed that D.D. was entering service lines through the same process as Relator. Relator then looked at billing records for D.D. from April 5, 2023 through May 26, 2023 and observed that nearly 2,000 service lines had been added that

appeared to not have been provided. Relator was aware that D.D. typically facilitated at most 10 group counseling sessions a week. Concerned that these 2000 additions were not accurate, Relator conferred with D.D., who confirmed that the clients added for each service line were not present during D.D.'s counseling sessions.

73.    The additional lines that Relator observed had been added amounted to almost 4,000 service units – approximately $140,000.

74.    Relator also observed that 627 service lines were added to Primary Counselor T.C.'s group counseling sessions over the same April 5, 2023 through May 26, 2023 period. Relator was aware the T.C. typically facilitated at most 3 group counseling sessions a week.

75.    Although T.C. facilitates a smaller number of group counseling sessions, the total service lines was 627 – a proportional number to the service lines added to D.D.'s documentation over the same period.

76.    Defendant also fraudulently billed therapeutic group counseling. Defendant is required to provide recreational activities that support sobriety for clients to participate in. Rather than provide any such actual activities,[10] Defendant merely provided meals on occasion and falsely billed the government as though it had provided the required recreational leisure activities. In certain instances, Defendant billed the government more than $30 per client, for nothing more than providing a couple slices of pizza to the client.

---

[10] Minn. Stat. 245G.07, subd. 2.

77.     Accordingly, Defendant billed for counseling services that it did not provide, which resulted in false and/or fraudulent claims being submitted to government payors in violation of the FCA.

78.     On June 9, 2023, Relator reported his concerns to Anita Boos, Director of Outpatient Services. In his email, Relator raised several specific examples about the systematic fraudulent conduct he observed, including: 1) he facilitated a morning group therapy session on May 11, 2023 in which 23 clients were in attendance, yet Defendant claimed in the service note that 45 clients were in attendance; 2) he facilitated an afternoon group therapy session on May 11, 2023 in which 28 clients were in attendance, yet Defendant submitted bills to Medicaid for 73 clients; 3) a patient Relator had never met, let alone provided counseling services to, was added to Relator's counseling services attendance documentation in 26 separate instances.

79.     In response, Boos scheduled a meeting with Relator, Boos, and Shantel Magadanz, Chief Executive Officer, for the following Monday, June 12, 2023.

80.     During the June 12, 2023 meeting, rather than address Relator's concerns about Defendant's fraudulent conduct, Boos and Magadanz raised pretextual performance concerns never before raised to Relator. Indeed, Boos and Magadanz made a complaint to Health Professionals Services Program (HPSP) on June 13, 2023, which resulted in an unwarranted 9-day suspension of Relator from providing any client services pending the investigation by HPSP. The investigation concluded in favor of Relator, and he was able to again provide services to clients.

### D. Defendant Falsified Documents

81.     In order to facilitate its fraudulent billing scheme, Defendant falsified documents by 1) adding services lines for clients who were not actually in attendance for peer recovery or counseling services, and 2) creating false clinical notes to support those falsified services lines.

82.     Defendant's own attendance documentation policy, referencing Minn. Stat. 245G.07, states that group facilitators are "responsible for taking attendance for each group they are facilitating, and to accurately record the times clients arrive and left group."

83.     As previously noted, the log and attendance documentation is used to enter service lines in the Procentive system. The service lines derived from the log and attendance documentation are then used to bill the government for Defendant's services.

84.     As the above examples illustrate, including those specific instances reported to Boos, Defendant routinely added service lines to facilitators' log and attendance documentation in order to inflate billings to the government.

85.     Through personal review of the Procentive system, Relator observed that Defendant engaged in this pattern of conduct with all of its providers. Relator observed that Defendant was adding over 200 group attendance service lines every day of every week.

86.     Defendant is required to maintain accurate client records, and entries in each record must be signed and dated by the staff member making the entry. Minn. Stat. 245G.09. In those instances where Defendant submitted claims for payment for service units that Defendant added, the required records and staff member sign-off did not exist.

Accordingly, Defendant submitted claims for payment without the required underlying documentation to support those claims.

87.     Additionally, upon his return from his unwarranted suspension, Relator observed that Defendant had created thousands of clinical notes, dating back years, that were not in existence before he raised concerns regarding Defendant's fraudulent conduct. Relator believes that Defendant created these records in an attempt to cover up its fraudulent conduct.

## VI.     DEFENDANT'S CONDUCT VIOLATES THE FCA

88.     Defendant violated the FCA by billing for group and individual substance abuse treatment services that it did not provide, were not supported by the required documentation, or were supported by falsified documentation.

89.     Whether because the client who purportedly received the service was not actually present and did not actually receive the service or because the billed-for service was not actually provided, billing for CPRS and counseling services for services that were never rendered violates material conditions of payments of claims under Medicaid and other government payors.

90.     Billing for CPRS and counseling services for services not supported by the medical record and/or by falsified documents violates material conditions of payments of claims under Medicaid and other government payors.

91.     When submitting or causing the submission of these false and/or fraudulent claims, Defendant acted knowingly in carrying out its billing schemes in order to fraudulently maximize the amount of money received from government payors.

92.     Defendant knew that compliance with all applicable federal and state Medicaid laws, regulations, and programs instructions is material to payment from government healthcare programs.  In fact, for each claim submitted, Defendant certified that the "information is true, accurate, and complete" and that it understood "payment of this claim will be from federal and state funds, and that any falsification or concealment of a material fact, may be prosecuted under Federal and State laws."[11]

93.     Defendant also knows that, under material payment provisions, government healthcare payors are only authorized to pay for services actually provided to patients, based on demonstrated medical needs in patient's health record.

94.     Yet instead of complying with material conditions of payment, Defendant worked to conceal its misconduct to fraudulently maximize the amount of money received from government payors. Defendant billed for peer recovery services and counseling services it did not provide; and in order to facilitate these fraudulent billings, Defendant also falsified documents by 1) adding services lines for clients who were not actually in attendance for peer recovery or counseling services, and 2) creating false clinical notes to support those services lines.

95.     Thus, Defendant acted knowingly (i.e., with actual knowledge, deliberate ignorance, and/or reckless disregard of the truth or falsity of the claims it submitted under government healthcare programs).

---

[11] 42 C.F.R. § 455.18.

96.     Accordingly, by billing for group and individual substance abuse treatment services that it did not provide and/or were not supported by the actual medical record, Defendant knowingly submitted false and/or fraudulent claims and caused the government to pay money it otherwise would not have paid.

## COUNT I
## VIOLATIONS OF THE FEDERAL FALSE CLAIMS ACT
### 31 U.S.C. § 3729(a)(l)(A) – False or Fraudulent Claims

97.     Relator realleges and incorporates by reference paragraphs 1 through 96 of this Complaint.

98.     By the acts described above, Defendant knowingly presented or caused to be presented materially false or fraudulent claims for payment in violation of 31 U.S.C. § 3729(a)(1)(A).

99.     Knowingly presenting or causing to be presented a materially false or fraudulent claim for payment renders Defendant liable for statutory penalties, pursuant to 31 U.S.C. § 3729(a), in an amount to be determined at trial.

100.    Had the government actually known of the false or fraudulent nature of the claims, it would have been prohibited by law from making the corresponding payments.

101.    However, the government, unaware of the falsity or fraudulent nature of the claims presented or caused to be presented by Defendant, paid and continues to pay for claims that otherwise would not have been paid because Defendant billed for group and individual substance abuse treatment services that it did not provide and/or were not supported by the required documentation.

102.   Because of Defendant's acts, and by reason of these payments and benefits given, the government sustained damages and continues to be damaged in an amount to be determined at trial, and therefore is entitled to damages and penalties under the FCA.

## COUNT II
## VIOLATIONS OF THE FEDERAL FALSE CLAIMS ACT
### 31 U.S.C. § 3729(a)(l)(B) – False Records or Statements

103.   Relator realleges and incorporates by reference paragraphs 1 through 96 of this Complaint.

104.   By the acts described above, Defendant knowingly made, used, or caused to be made or used, false records or statements material to false or fraudulent claims submitted or caused to be submitted for payment in violation of 31 U.S.C. § 3729(a)(1)(B).

105.   Knowingly making, using, or causing to be made or used, false records or statements material to false or fraudulent claims submitted or caused to be submitted for payment renders Defendant liable for statutory penalties, pursuant to 31 U.S.C. § 3729(a), in an amount to be determined at trial.

106.   Had the government actually known of the false or fraudulent nature of the records or statements, it would have been prohibited by law from making corresponding payments.

107.   However, unaware of the falsity or fraudulent nature of the records or statements presented or caused to be presented by Defendant, the government paid and continues to pay for claims that otherwise would not have been paid because Defendant billed for group and individual substance abuse treatment services that it did not provide and/or were not supported by the required documentation.

108.   Because of the falsity of the records or statements, which were material to false or fraudulent claims submitted for payment or approval, the government suffered actual damages in an amount to be determined at trial, and for which Defendant is liable to pay treble, pursuant to 31 U.S.C. § 3729(a).

### COUNT III
### VIOLATIONS OF THE MINNESOTA FALSE CLAIMS ACT
### Minn. Stat. § 15C.02(a)(1) and (2) – False or Fraudulent Claims and False Records or Statements

109.   Relator realleges and incorporates by reference paragraphs 1 through 96 of this Complaint.

110.   By virtue of the acts alleged above, Defendant knowingly presented or caused to be presented, materially false or fraudulent claims for payment or approval in violation of Minn. Stat. § 15C.02(a)(1).

111.   By virtue of the acts alleged above, Defendant knowingly made, used, or caused to be made or used, materially false records or statements material to a false or fraudulent claim in violation of Minn. Stat. § 15C.02(a)(2).

112.   The government, unaware of the falsity or fraudulent nature of the claims presented or caused to be presented by Defendant and unaware of the making and use of false records or statements material to a false claim, paid and continues to pay amounts that otherwise would not be paid had it known of Defendant's fraudulent billing.

113.   Indeed, had the government actually known of the false or fraudulent nature of the claims, records, or statements, it would have been prohibited by law from making the corresponding payments. However, unaware of the falsity or fraudulent nature of

24

Defendant's claims, records, or statements, the government paid and continues to pay for claims that otherwise would not have been paid because Defendant billed for group and individual substance abuse treatment services that it did not provide and/or were not supported by the required documentation.

114.   Because of Defendant's acts, and by reason of these payments and benefits given, the government sustained damages and continues to be damaged in an amount to be determined at trial, and therefore is entitled to damages and penalties under the MNFCA.

**PRAYER FOR RELIEF**

**WHEREFORE**, Relator, the United States of America, and the state of Minnesota request that this Court:

A.     Enter judgment for the United States of America, the state of Minnesota, and Relator, and against Defendant;

B.     Order Defendant to cease and desist from violating the False Claims Act, 31 U.S.C. § 3729 *et seq.* and Minn. Stat. § 15C, *et seq*;

C.     Award the United States of America and the state of Minnesota on whose behalf this Complaint has been brought damages against Defendant as required by law for Defendant's violations of the False Claims Act and the Minnesota False Claims Act as alleged in this Complaint;

D.     Assess civil penalties against Defendant as required by law for the false statements and false claims described in this Complaint;

E.     Award Relator an appropriate relator's share, in an amount to be agreed upon by the government and Relator or, if no agreement can be reached, by

the Court, pursuant to 31 U.S.C. § 3730(d) and the equivalent statutory provisions in Minn. Stat. § 15C.13;

      F.     Award prejudgment interest;

      G.    Award Relator statutory attorney's fees, costs, and expenses pursuant to 31 U.S.C. § 3730(d) and Minn. Stat. § 15C.12; and

      H.    Grant such other relief as the Court may deem just, necessary, and proper.

**RELATOR DEMANDS TRIAL BY JURY ON ALL COUNTS WHERE JURY IS AVAILABLE.**

Respectfully submitted,

Dated: August 17, 2023

Nathaniel F. Smith, MN No. 397276
Chandra Napora (OH No. 92886)*
MORGAN VERKAMP
4410 Carver Woods Dr.
Suite 200
Cincinnati, OH 45242
Telephone: (513) 651-4400
Facsimile: (513) 651-4405
nathaniel.smith@morganverkamp.com
chandra.napora@morganverkamp.com

*ATTORNEYS FOR RELATOR*

*\* Pro Hac Vice to be filed*